UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| VINCENT GRANT, ) | Case No. 1:11CV942 |
| ) | |
| Petitioner, ) | JUDGE JAMES G. CARR |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| EDWARD SHELDON, Warden, ) | |
| ) | |
| Respondent. ) | **Report and Recommendation** |
| ) | **of Magistrate Judge** |

On May 4, 2011[1], Petitioner Vincent Grant ("Petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred as a result of his conviction and sentence in the Cuyahoga County, Ohio Court of Common Pleas, for one count of sexual battery, in violation of R.C. 2907.03(A)(2), a felony of the third degree. With leave of Court, on October 6, 2011, Respondent Edward Sheldon ("Respondent"), Warden of Toledo Correctional Institution, where Petitioner is incarcerated, filed an answer/return of writ. ECF Dkt. #13. On February 13, 2012, Petitioner filed his traverse/response to Respondent's return of writ. ECF Dkt. #15. On February 21, 2012, Respondent filed a reply brief. ECF Dkt. #16. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

I.  **SYNOPSIS OF THE FACTS**

The Eighth District Court of Appeals of Ohio set forth the relevant facts and procedural history of this case on direct appeal. ECF Dkt. #13-3 at 77-85.[2] These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of

---

[1]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

[2]Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> {¶ 2} In 2008, Grant was charged with rape, kidnapping, and two counts of felonious assault. On the day trial was supposed to begin, Grant and his attorney both requested that new counsel be appointed to represent him. Grant's counsel informed the trial court that he and his client did not get along and had had heated arguments. The trial court stated that "the issue here is he [Grant] is an intimidator." Counsel responded that Grant had told him "f* * * you, you white son of a b* * * *." The court then appointed new counsel to represent Grant.
>
> {¶ 3} Grant filed a pro se motion requesting the judge be dismissed from the case alleging she was biased against him. He also filed a complaint with the Ohio State Bar Association.
>
> {¶ 4} Two months later, Grant pled guilty to sexual battery. The issue of Grant's motion to remove the judge from his case was not mentioned during the plea colloquy. The trial court ordered a presentence investigation report and subsequently sentenced Grant to five years in prison. The court also classified Grant as a Tier III sex offender.

*State v. Grant,* 2010 WL 4296629, ECF Dkt. #13-3 at 77-85.

## II. PROCEDURAL HISTORY

### A. State Trial Court

On December 5, 2008, Petitioner was indicted for:

-one count of rape, in violation of R.C. 2907.02(A)(2), with a sexually-violent predator specification pursuant to R.C. 2941.148(Count One);

-one count of kidnapping in violation of R.C. 2905.01(A)(4), with a sexual motivation specification pursuant to R.C. 2941.147 (Count Two); and

-two counts of felonious assault in violation of R.C. 2903.11(A)(2), with sexual motivation specifications pursuant to R.C. 2941.147(Counts Three and Four).

ECF Dkt. #13-4 at 86-89.

On March 9, 2009, the day that the trial was scheduled to begin, Petitioner's trial counsel, Douglas Glenn, Esq., made an oral request to withdraw from the case. The trial judge asked Petitioner to explain the problems that existed with Attorney Glenn, and Petitioner responded, "He is not in my best interest, ma'am. . .We don't agree on things. . .We have very heated arguments about this case. It is not getting resolved in the best way that I can see fit." ECF Dkt. #13-7 at 106-107. The following colloquy took place:

> THE COURT: What is the problem?

> THE DEFENDANT: Lack of communication, ma'am.
>
> THE COURT: Well, that is not going to improve so I suggest to you that you communicate because we're getting ready to go to trial. Well?
>
> THE DEFENDANT: I don't have no other choice, do I?
>
> THE COURT: That is what it looks like, doesn't it?
>
> THE DEFENDANT: I'm waitin' on you, your honor.

*Id.* at 108.

Attorney Glenn stated that he did not think he could properly represent Petitioner. The trial judge asked Attorney Glenn to explain his inability to represent Petitioner. The trial judge reasoned that counsel, a former county prosecutor and one of the county's best lawyers had "tried every kind of case in the world." *Id.* at 107-108. She concluded that "the issue is [Petitioner] is an intimidator. [Petitioner] does not like you personally, personally. He can't be – it can't be because you're not a good lawyer or you don't know to represent him. So what could it be?" *Id.* at 108. Trial counsel responded, "We can't community. [sic]" The trial judge responded, "Well, he better start communicating with you." *Id*. at 108-109.

Based upon the trial court's apparent decision to deny his motion to withdraw, Attorney Glenn requested a continuance. In an effort to further explain her decision on the motion to withdraw as counsel, the trial judge observed that "[t]he Constitution only guarantees to an individual a lawyer. A competent lawyer. Now, you're past that. You're past competent. So what? What is the problem? Don't sit there lookin' at me like that. That's not going to get you any place." *Id.* at 109. Attorney Glenn responded, "I will put on the record what basically occurred this past week. . .he said, 'Fuck you, you white son of a bitch,' and stormed out of the room." *Id.* The trial court then reasoned that "[Attorney Glenn] should not be the subject of racial attacks. That doesn't make any of us feel good. The question then becomes whether or not I should subject you to that or whether that is unfair. I guess that is unfair. For that reason, I will allow you to recuse." *Id.* at 110. The trial judge appointed new counsel that day on the record. *Id.*

On March 17, 2009, Petitioner, despite the fact that he was represented by counsel, filed a *pro se* motion to dismiss the trial judge from the case due to bias and conflict of interest.[3] Then, on May 13, 2009, Petitioner appeared in court with counsel and entered a guilty plea to the amended charge of sexual battery in Count One, in violation of R.C. 2907.03(A)(2), with a sexual violent predator specification. *Id.* at 112. Petitioner was informed that, as a result of his plea, he would be classified under Ohio law as a Tier III sex offender and was informed of his duty to register under the statute. *Id.*

In his traverse, Petitioner contends that he "was coerced into taking a plea deal upon misinformation concerning the amount of time that [Petitioner] would receive, and being made to believe that there was no defense to the charges." ECF Dkt. #15 at 224. However, when the trial court asked Petitioner during the plea colloquy if anyone had made any promises or threats to induce him to change his plea to guilty, he responded, "No, ma'am." ECF Dkt .#13-7 at 117. On June 15, 2009, the trial court imposed the maximum sentence for a third degree felony, that is, five years imprisonment on Count One. ECF Dkt. #13-2 at 76. Counts Two through Four were nolled. *Id.*

### B. Post-Sentence Motion to Withdraw Guilty Plea

On August 3, 2009, Petitioner filed a *pro se* motion to withdraw his guilty plea. ECF Dkt. #13-8 at 133-135. Petitioner argued that the DNA evidence from the lab was negative, he was denied a speedy trial, the trial judge was biased and had a conflict of interest, and his trial counsel promised that, in exchange for his guilty plea, Petitioner would receive a sentence of probation. *Id.* at 134. The motion was summarily denied on September 14, 2009. ECF Dkt. #13-9 at 136.

### C. Direct Appeal

On October 19, 2009, Petitioner filed a motion to file a delayed appeal with the Eighth District Court of Appeals. ECF Dkt. #13-10 at 140. The motion was granted, and Petitioner, represented by new appellate counsel, filed his appellate brief. Petitioner, raised the following assignments of error in his appellate brief:

---

[3]The motion is not included in the record. However, the docket reflects that the motion was filed on March 17, 2009. ECF Dkt. #13-5 at 98.

> ASSIGNMENT OF ERROR I:
>
> THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF DUE PROCESS BASED UPON INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> ASSIGNMENT OF ERROR II:
>
> THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING THE APPELLANT TO THE MAXIMUM PENALTY WITHOUT CONSIDERATION OF THE OVERRIDING PURPOSES OF FELONY SENTENCING OR THE MANDATORY SENTENCING FACTORS.
>
> ASSIGNMENT OF ERROR III:
>
> THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING THE APPELLANT TO THE MAXIMUM PERIOD OF INCARCERATION WITHOUT ARTICULATING JUDICIALLY REVIEWABLE REASONS FOR IMPOSITION OF THE SENTENCE.

ECF Dkt. #13-11 at 142.

On October 28, 2010, the Eighth District Court of Appeals affirmed the trial court's judgment of conviction and sentence. ECF Dkt. #13-3 at 77-85.

### D.     Supreme Court of Ohio

On December 15, 2010, Petitioner, acting *pro se*, filed a motion for a delayed appeal to the Supreme Court of Ohio. ECF Dkt. #13-14 at 173-183. The motion was granted on February 2, 2011. ECF Dkt. #13-15 at 184. However, on March 9, 2011, the appeal was dismissed pursuant to Ohio Supreme Court Rules of Practice, based upon Petitioner's failure to file a memorandum in support of jurisdiction. ECF Dkt. #13-16 at 185. Rule II, Section 2 of the Ohio Supreme Court Rules of Practice, captioned "Institution of Appeal from Court of Appeals," reads, in pertinent part, "[i]f the Supreme Court grants a motion for delayed appeal, the appellant shall file a memorandum in support of jurisdiction within thirty days after the motion for delayed appeal is granted. If a memorandum in support of jurisdiction is not timely filed after a motion for delayed appeal has been granted, the Supreme Court will dismiss the appeal." Rule II, Section 2(A)(4)(b).

### E.     Application to Reopen Direct Appeal

On December 29, 2010, during the pendency of his Ohio Supreme Court appeal, Petitioner filed a *pro se* Application to Reopen his appeal. ECF Dkt. #13-17 at 186-195. In his application, Petitioner asserted that he was denied effective assistance of appellate counsel because his counsel

did not appeal the following issues: (1) trial counsel did not adequately cross-examine witnesses; (2) the verdict was against the manifest weight of the evidence; (3) the verdict was against the sufficiency of the evidence; and (4) Petitioner was denied a fair trial as a result of judicial bias, in violation of Petitioner's constitutional right to due process.  On May 10, 2011,  Petitioner's application was denied due to Petitioner's failure to comply with App.R. 26(B)(2)(d).  ECF Dkt. #13-18 at 196-202.  The Rule requires that a sworn statement of the basis for the claim that appellate counsel's representation was deficient must be filed with the application. The Eighth District also considered the merits of Petitioner's application, and concluded that he had waived the first three issues when he entered his guilty plea, and that the Court had previously considered his judicial bias claim on direct appeal.

### F.    Supreme Court of Ohio

On June 8, 2011, Petitioner, acting *pro se*, filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #13-19 at 203-204.  Petitioner filed a memorandum in support of jurisdiction, raising the following proposition of law:

> The ineffective assistance of appellant's appellate counsel violated appellant's right to assistance of counsel under the Sixth Amendment of the United States Constitution of Article I Sec. 10 of the Ohio Constitution.

*Id*. at 206.  On August 24, 2011, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt.#13-21 at 215.

## III.  28 U.S.C. § 2254 PETITION

On May 4, 2011, Petitioner, acting *pro se*, filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1.  Petitioner raises the following ground for relief:

> GROUND ONE:
>
> THE INEFFECTIVE ASSISTANCE OF PETITIONER'S TRIAL AND APPELLATE COUNSEL VIOLATED PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
>
> SUPPORTING FACTS:
>
> TRIAL COUNSEL DID NOT QUESTION THE MAIN WITNESS IN THE STATE'S CASE AS TO HER CONFLICTING TESTIMONY, ALONG WITH THE VICTIM'S BOYFRIEND WHO CHANGED THEIR STORIES AT LEAST TWICE WHILE BEING INTERVIEWED BY THE CLEVELAND POLICE

> DEPARTMENT (SEE VICTIM'S VOLUNTARY STATEMENT , THE CASE REPORT AND CASE REPORT DETAIL SHEETS). ADDITIONALLY THE DNA EVIDENCE IN THE INSTANT CASE DOES NOT SUPPORT THE VICTIM'S STATEMENTS. THERE WERE NO FINDINGS OF DNA EVIDENCE AT THE SCENE OR ON THE VICTIM'S THAT WOULD SUPPORT THE VICTIM'S STORY. YET, TRIAL COUNSEL DID NOT BRING THIS UP IN COURT AND PRESENT EXCULPATORY EVIDENCE THAT WOULD HAVE SHOWN THIS CONVICTION TO BE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. AS THIS CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IT IS ALSO AGAINST THE SUFFICIENCY OF THE EVIDENCE. TRIAL COUNSEL CROWNED HIS INEFFECTIVENESS BY STANDING MUTE WHEN THE TRIAL JUDGE ABUSED HER JUDICIAL DISCRETION BY IMPOSING THE MAXIMUM SENTENCE WITH NO FINDINGS PURSUANT TO O.R.C. 2929.11 OR 2929.12 AND THEN MADE PETITIONER A TIER III OFFENDER WITH NO FINDINGS TO THIS CLASSIFICATION. THIS RISES TO THE STANDARD OF ABUSE OF JUDICIAL DISCRETION WHICH CONNOTES MORE THAN AN ERROR OF JUDGMENT; RATHER IT IMPLIES THAT THE TRIAL COURT ACTED UNREASONABLY, ARBITRARILY, OR UNCONSCIONABLY. PETITIONER'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WAS COMPOUNDED BY THE INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WHO FAILED TO ARGUE THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL OR ABUSE OF DISCRETION AS STATED ABOVE, AND THUS GUARANTEED THE FAILURE OF PETITIONER'S APPEAL. APPELLATE COUNSEL ALSO FAILED TO TIMELY APPEAL THIS DENIAL BY THE APPELLATE COURT TO THE OHIO SUPREME COURT. IN TRYING TO PERFECT THIS DELAYED APPEAL, PETITIONER WAS TRANSFERRED TO FROM BELMONT CORRECTIONAL INSTITUTION TO NORTH CENTRAL CORRECTIONAL INSTITUTION RESULTING IN THE DELAYED APPEAL AS BEING DENIED AS UNTIMELY.[4] FOR ALL OF THE ABOVE REASONS PETITIONER ASKS THAT THIS COURT FIND THAT THE INEFFECTIVE ASSISTANCE OF PETITIONER'S TRIAL AND APPELLATE COUNSEL VIOLATED PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

ECF Dkt. #1.

## IV. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the

---

[4]Petitioner's motion to file a delayed appeal to the Ohio Supreme Court was granted.

courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4)

-8-

alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not

required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction;

(3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where

-10-

state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## V.     STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 4, 2011, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus.  The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A. Decisions of lower federal courts may not be considered.
>
> B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C. The state court decision may be overturned only if:

-12-

      1.      It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

      2.      the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

      3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

      4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

  D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

  E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced

-13-

because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, 672,676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court recently observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI. ANALYSIS

### A. Procedural Default

Respondent asserts that Petitioner's claims in Ground One are procedurally barred based upon the dismissal of his direct appeal before the Ohio Supreme Court for failure to comply with the Ohio Supreme Court Rules of Practice, and the dismissal of his Rule 26(b) motion for failure to comply with the Ohio Appellate Rules. In order to determine whether procedural default bars the instant petition, the undersigned must apply the four-pronged *Maupin* test.

With respect to the dismissal of his Petitioner's direct appeal, the undersigned recommends that the Court find that the first prong of the *Maupin* test is met because Petitioner failed to comply with the applicable procedural rules of the Ohio Supreme Court. The second *Maupin* factor is satisfied because the Ohio Supreme Court did indeed enforce the procedural bar by dismissing Petitioner's appeal. The third factor is met because the Supreme Court's denial of Petitioner's motion for a delayed appeal constitutes a procedural ruling that bars federal review of the merits of the petition. See *Humphrey v. Jackson,* 2008 WL 5412444 (S.D. Ohio)(dismissal based upon failure to file memorandum in support of jurisdiction constitutes procedural default); see also *Harris v. Warden, Chillicothe Correctional Institute*, __ F.Supp.2d __, 2011 WL 6076331 (S.D. Ohio)(exceeding page limitation and failure to attach copy of judgment resulting in failure to perfect

-14-

appeal constitute procedural default). Accordingly, the dismissal of Petitioner's appeal for failure to comply with the applicable procedural rules of the Ohio Supreme Court is an adequate and independent ground to foreclose review of the merits of his petition in the federal habeas court. *Id.*

Since prongs one, two and three of *Maupin* are met, the instant petition will be barred unless Petitioner can show cause for his default and prejudice resulting from the constitutional violation. Here, Petitioner offers no explanation for his procedural default. Furthermore, Petitioner has not established cause for failing to comply with the state's filing requirements. Moreover, since Petitioner has failed to establish cause, it is unnecessary to determine whether he was prejudiced by the Supreme Court of Ohio's decision. See *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Beyond *Maupin*, the Court can still consider the instant petition if the Court determines that it is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent..." *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986). The Sixth Circuit Court of Appeals explained that the "actual innocence" exception, or the "fundamental miscarriage of justice" gateway, is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004), quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray*, 477 U.S. at 496. The Sixth Circuit held that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* Petitioner has produced no new evidence to carry his burden in that respect. Therefore, his perfunctory claim of actual innocence should fail.

Accordingly, the undersigned recommends that the Court find that Petitioner's assertions in Ground One predicated upon the claims raised in his direct appeal, that is, ineffective assistance of trial counsel relating to trial counsel's failure to seek disqualification of the trial judge, and his claims based upon the imposition and length of his sentence are procedurally barred.

Likewise, the remaining claims, asserted in the Rule 26(B) application are procedurally barred based upon Petitioner's failure to comply with the Ohio Appellate Rules. The Eighth District observed that Petitioner's failure to attach his affidavit to the application constituted sufficient grounds to dismiss the application, citing *State v. Forsten*, 8th Dist. No. 92337, 2010-Ohio-2337. See *Smith v. Warden, Toledo Correctional Facility*, 2011 WL 4337092 (S.D. Ohio)("Furthermore, Smith failed to include a 'sworn statement' with his application for reopening his appeal. (Doc. 18–1 at 258). A sworn statement is mandatory under App.R. 26(B)(2)(d). Smith failed to exhaust state court remedies resulting in a procedural default."); *Thompson v. Anderson*, 2010 WL 4026121 (N.D. Ohio)(same). Applying the *Maupin* test, there is clearly a state filing requirement of a particularized affidavit and Petitioner did not submit such an affidavit. Second, the state did enforce the requirement against Petitioner and held his Rule 26(B) application to be procedurally defaulted based in part upon this deficiency. Third, a review of Ohio caselaw shows that the affidavit requirement in Rule 26(B) applications is well-established and regularly enforced. See *State v. Perry*, 2009 Ohio 2245, 2009 WL 1351114 (8th Dist. May 12, 2009) (holding that the affidavit is mandatory in Rule 26(B) applications and failure to include it is a sufficient reason to deny the application); see also *State v. Lechner*, 72 Ohio St.3d 374, 375, 650 N.E.2d 449 (1995) (affirming the judgment of the appellate court that the sworn affidavit is mandatory). Petitioner does not demonstrate any cause for his failure to file the mandatory affidavit, and, as stated earlier, he makes only a perfunctory claim of actual innocence. Accordingly, the undersigned recommends that the Court find that the claims in Ground One, to the extent that they are predicated upon Petitioner's ineffective assistance of appellate counsel claims advanced in his Rule 26(B) application are procedurally barred.

### B. Merits

Even assuming that the claims asserted in Ground One are not procedurally barred, "[a] guilty plea extinguishes a defendant's right to collaterally attack independent claims of constitutional violations that are not related to whether the petitioner was deprived of the ability to decide intelligently and voluntarily to plead guilty." *Madrigal v. Welch*, 2011 WL 834136 (N.D.Ohio Jan 31, 2011) (citing *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)). As

-16-

Petitioner's substantive claims (failure to question witnesses, manifest weight of the evidence, and sufficiency of the evidence) do not challenge the intelligent and voluntary nature of his plea, they have been waived. Likewise, appellate counsel's failure to raise those claims on direct appeal does not constitute a violation of Petitioner's constitutional rights.

Next, it is well-established that " 'federal habeas corpus relief does not lie for errors of state law.' " *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). Petitioner's argument that the state court erred in applying R.C. 2929.11 and 2929.12 is based solely on the state court's interpretation of state law. It does not implicate any federal rights. *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ("[S]tate courts are the ultimate expositors of state law.").

Accordingly, the undersigned recommends that, if the Court finds that the arguments in Ground One are not procedurally barred, they have no merit.

### VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE: June 11, 2012

                         */s/George J. Limbert*
                         GEORGE J. LIMBERT
                         UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).